**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH WHITFIELD,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:18-1390** |
| **v.** | : | **(JUDGE MANNION)** |
| **COMM. OF PA,** *et al.*, | : | |
| **Defendants** | : | |

**MEMORANDUM**

I. BACKGROUND

Plaintiff, Joseph Whitfield, an inmate formerly confined at the Dauphin County Prison, Harrisburg, Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983.[1] (Doc. 1). The named Defendants are the Commonwealth of Pennsylvania, Dauphin County Sheriff's Department, Dauphin County Prison, Warden Brian Clark, PrimeCare Medical, Inc. and Dr. William Young. Id. Plaintiff, who is sixty years old and "disabled, using a cane to get around", alleges that on January 8, 2018, he "fell to the ground while handcuffed to another inmate" after that inmate "fell on ice that had not

---

[1] Plaintiff is currently housed in the Harrisburg Community Corrections Center, 27 N. Cameron Street, Harrisburg, Pennsylvania.

been removed prior to being transported from the Dauphin County Courthouse by the County Sheriff's Department." Id. He claims that the inmate was "taken to the Harrisburg Hospital by ambulance and [he] was told to go back to the County Jail and see the medical department." Id. However, "upon returning [Plaintiff] was told by the Sgt. on duty to go back to his housing block and tell the C.O. to call medical but was sent back to his cell without ever being called to medical." Id. Plaintiff states that "despite many request slips to the medical dept., [he] did not see a representative until approximately two weeks later." Id.

Plaintiff was seen by Dr. Young, who Plaintiff claims "told [Plaintiff] he wouldn't be given any pain medicine or treatment for his injuries." Id. In May 2018, Plaintiff was "seen by a nurse in the Medical Department, who "prescribed 'Ben Gay Rubbing Cream' for his injuries." Id. On June 18, 2018, Plaintiff was again seen by Dr. Young and "was told that he will not let the Plaintiff have a 'Second Opinion' and he will have to wait until he is released on bail or is discharged from the prison by the Court." Id. On June 29, 2018, Plaintiff wrote to Mr. John Addison, Directory of Treatment, "explaining to him what Dr. Young had said to him." Id. On June 26, 2018, Plaintiff wrote to the Warden and "also explained to him that he wrote to Mr. Addison, again no response has been received." Id.

On July 13, 2018, Plaintiff filed the instant action in which he claims that he "suffered physical injuries to his left arm, left shoulder and right knee" when he fell on January 8, 2018. For relief, he seeks damages for "pain and suffering, medical negligence and cruel and unusual punishment." Id.

On March 25, 2019, a motion to dismiss was filed on behalf of Defendants Dr. Young and the Dauphin County Jail Medical Department ("Medical Defendants"). (Doc. 21). On the same date, a separate motion to dismiss was filed on behalf of Defendants Brian Clark, Dauphin County Jail and Dauphin County Sheriff's Department ("Dauphin County Defendants"), in which Defendants address the merits, as well as argue that Plaintiff's action should be dismissed for Plaintiff's failure to properly exhaust his administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a). (Doc. 23).

On January 21, 2020, in accordance with Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018), (holding that the District Court shall provide the parties notice that it will consider exhaustion in its role as fact finder under Small v. Camden Cty., 728 F.3d 265 (3d Cir. 2013)), this Court issued an Order, converting Dauphin County Defendants' motion to dismiss to a motion for summary judgment and allowing the parties an opportunity to supplement

the record with supporting evidence relevant to the exhaustion of administrative remedies. (Doc. 38).

On February 18, 2020, Defendants filed a statement of material facts in support of their motion for summary judgment. (Doc. 44). On March 5, 2020, Plaintiff filed a brief in opposition to Defendants' motion for summary judgment. (Doc. 45).

Defendants' motions are ripe for disposition. For the reasons set forth below, the Court will grant Dauphin County Defendants' motion for summary judgment and the Medical Defendants motion to dismiss.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the

motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."

L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

### B. **Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (*per curiam*).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

### III. STATEMENT OF MATERIAL FACTS[2]

The Dauphin County Prison has an inmate grievance procedure. (See Doc. 43-4 at 1). The process first requires the inmate to "write out the complete grievance being as brief but as specific as possible soon after the alleged occurrence." Id. The grievance must be submitted to the Warden, Deputy Warden, or a Security Major. Id. If the grievance is denied, the inmate can appeal to the Chairman of the Dauphin County Prison Board of Inspectors. Id. A further appeal can then be taken to the full Prison Board. Id. Finally, an appeal from the full Prison Board can be taken to the Dauphin County Solicitor. Id.

---

[2] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party]...as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. Id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. 44). Plaintiff did not file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1. Thus, the Court deems the facts set forth by Defendants to be undisputed. See M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

On June 26, 2018, Plaintiff submitted a request slip to Warden Brian

Clark stating the following:

> On June 19, 2018 [I] Wrote to Mr. J. Addison telling him what
> Doctor Young had told me that he will not let me have a second
> opinion to go to the hospital about my left shoulder and right leg.
> Doctor Young told me to take him to court. He knows that I have
> medical problems. He also knows that on Jan. 8, 2018 that [sic]
> when I was at the courthouse I was hand-cuff to a inmate and we
> fell to the ground hitting the ice. Inmate James Smith was taken
> to the hospital and I was taken back to the prison and was told
> to see the doctor at the prison. I have been having problems
> [since] the courthouse!!! I have not been getting any help from
> this prison!!!

(Doc. 43-5 at 1, Plaintiff's Grievance).

On June 29, 2018, Geoffrey Boblick, Director of Administration,

forwarded Plaintiff's grievance to the medical department for review. (Doc.

43-5 at 2).

On July 13, 2018, eighteen days after filing his grievance, Plaintiff

filed the instant action. (Doc. 1).

On September 20, 2018, Jennifer Ruble, Assistant Director of

Nursing submitted the following in response to Plaintiff's grievance:

> This memorandum is written in response to the grievance
> received from the Warden's Office of the Dauphin County
> Prison for the above mentioned patient on June 29, 2018. The
> patient has been in the facility since 8-12-17.
>
> After review of this patient's chart, Mr. Whitfield has been seen
> by medical providers on several occasions and was offered and
> ordered several different pain medications. Mr. Whitfield has

been referred to an outside orthopedic practice for further treatment and care of his left shoulder.

In regard to the issues/concerns outlined in the grievance, he was seen, treated and appropriate care was provided. If there are any questions regarding this memorandum, please contact me at (717) 780-6815.

(Doc. 43-5).

On September 21, 2018, Warden Clark denied Plaintiff's

grievance as follows:

Please be advised that, as a result of your recent complaint/grievance regarding medical care, your concerns were forwarded to the Medical Department, which has reviewed your complaint/grievance and provided me with a response.

After a review of your medical records, it appears that you have been seen by the medical providers on several occasions and were offered and ordered several different pain medications. You have been referred to an outside orthopedic practice for further treatment and care of your left shoulder.

After review, it is evident that appropriate care has been rendered. Based on this review, you have been appropriately and properly treated. Therefore, your complaint/grievance is denied.

If you do not agree with the above findings, you may appeal to the next level. The appeal along with any additional information should be directed to the Administrative Offices for forwarding to the Prison Board Chairman at the Chair's monthly Prison Board meeting.

(Doc. 43-5 at 4, Memorandum). No further appeal was filed.

**IV. DISCUSSION**

    **A. Exhaustion**

Under the PLRA, a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. See 42 U.S.C. §1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997(e). The exhaustion requirement is mandatory. Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"). Moreover, while Plaintiff was released from prison after filing the above-captioned case (Doc. No. 10), he is still bound by the exhaustion requirement because he has raised claims concerning events that occurred prior to his release. See Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002).

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to §1997e's exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. Id. Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See e.g., Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).

Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. Warman, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an

incarcerated *pro se* petitioner, generally does not excuse prompt filing.' ") (citations omitted).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. <u>See</u> Ross v. Blake, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation. Id. at 1860.

The Third Circuit recently joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." Rinaldi v. United States, 904 F.3d 257, 267 (3d Cir. 2018). To defeat a failure-to-exhaust defense based on such threats, "an

inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." Id. at 269.

Finally, failure to exhaust is an affirmative defense that must be pled by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence... that would entitle [them] to a directed verdict if not controverted at trial'." Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006) (quoting In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (internal quotations omitted)). If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Id. (quoting Nat'l State Bank v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992) (internal quotations omitted)).

Here, Defendants argue that Plaintiff's grievance record demonstrates that he failed to properly exhaust his administrative remedies prior to filing the instant action because he did not wait for a response to his grievance

before filing in federal court, and he made no effort to file an appeal of his grievance after it was denied.

In opposition, Plaintiff states that he did attempt to file an appeal of the Warden's decision to the Prison Board Chairman. (Doc. 45). He attaches to his brief in opposition an October 4, 2018 Inmate Request Form, which states the following:

> I would like to appeal the September 21, 2018 decision made by Brian S. Clark, Warden to the Prison Bard Chairman at the Chair's monthly Prison Board Meeting.

(Doc. 45 at 7).

The Court finds that while Plaintiff may have attempted to exhaust his grievance to final review, he did so after he had already filed the above captioned action in federal court. To that end, the PLRA mandates that prisoners exhaust all available administrative remedies <u>prior</u> to initiating a suit under §1983 for the deprivation of Constitutional rights. 42 U.S.C. §1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) (finding that prisoners must pursue their claims through prison channels prior to commencing related litigation in federal courts). The record is clear that Plaintiff did not exhaust his administrative remedies <u>prior</u> to filing the instant action, and Defendants are entitled to summary judgment.

## B. Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state

a valid claim of medical mistreatment under the Eighth Amendment ..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison

doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

Assuming, without deciding, that Plaintiff's medical needs were serious in the constitutional sense, the allegations in Plaintiff's complaint and Plaintiff's exhibits clearly demonstrate that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim.

Additionally, Plaintiff's own exhibits, filed in opposition to Dauphin County Defendants' motion for summary judgment, reveal that Plaintiff has been referred to an outside orthopedic practice for further treatment and care of his left shoulder. (See Doc. 45 at 6).

At best, Plaintiff's complaint demonstrates his disagreement with the type of treatment rendered. Though he may have disagreed with Dr. Young's assessment that no additional treatment was necessary, nor was a second opinion necessary, his disagreement with the course of action that was taken is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing Estelle, 429 U.S. at 105-06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)). This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse. To the extent that record demonstrates that Plaintiff has been referred to an outside orthopedic practice for further treatment and care of his left shoulder, shows that Defendants continue to be attentive to Plaintiff's situation. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's

subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence cannot serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim. See White, 897 F.2d at 108-110.

### C. Defendant PrimeCare Medical, Inc.

Plaintiff asserts a §1983 claim against PrimeCare Medical, a limited liability company that provides health care services to the Dauphin County Prison under contract. A private corporation providing health services to inmates may be liable under §1983 to the extent its policies or customs exhibit deliberate indifference to a prisoner's serious medical needs. Palakovic v. Wetzel, 854 F.3d 209, 232 (3d Cir. 2017) (citing Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583-84 (2d Cir. 2003). A plaintiff must show that a relevant policy or custom cause the constitutional violation at issue. Natale, 318 F.3d at 583-84, ("In order for PHS to be liable, the [plaintiffs] must provide evidence that there was a relevant PHS policy or custom, and that the policy caused the constitutional violation they allege.").

In the absence of a predicate constitutional injury, however, there can be no liability on the part of PrimeCare. Cessna v. Corr. Med. Servs., 794

F.Supp.2d 544, 550 (D. Del. 2011)("The court has concluded that Dr. Wallace did not violate plaintiff's constitutional rights under the Eighth Amendment. CMS, therefore, cannot be liable based on the theory that it established or maintained an unconstitutional policy or custom responsible for violating plaintiff's rights.") (citing Goodrich v. Clinton Cty. Prison, 214 F. App'x. 105, 113 (3d Cir. 2007)).

Here, Plaintiff has failed to assert facts that could plausibly establish a violation of his Eighth Amendment rights. Moreover, Plaintiff has not asserted that his health care providers acted in a manner that was deliberately indifferent to his serious medical needs. In any event, however, Plaintiff's own allegations indicate that he was seen by medical staff on numerous occasions. During the course of his treatment, Plaintiff was given pain medication and referred to an outside orthopedic specialist. Based on the facts alleged, Plaintiff has not demonstrated that prison medical personnel were deliberately indifferent to his serious medical needs. See Matthews v. Pa. Dep't of Corr., 613 F. App'x. 163, 170 (3d Cir. 2015), (prison medical officials were not deliberately indifferent to plaintiff's Achilles tendonitis, where complaint allegations showed that they saw him regularly, prescribed a cast and crutches, and advised him not to participate in certain physical activities during his recovery; to the extent they exposed him to

greater risk of injury by refusing to recommend a cell reassignment, their mistake involved only negligence, not deliberate indifference); Brandner v. First Corr. Medical, Civil No. 05-3920, 167 F. App'x. 328 (3d Cir. 2006)(per curiam), (plaintiff inmate who suffered from a swollen and painful knee did not state an Eighth Amendment claim against correctional medical center, medical director, or nursing supervisor where plaintiff had been seen by staff on approximately a monthly basis, medical staff provided pain medication and performed x-rays, plaintiff was given a cane, a post-complaint MRI showed that his knee was within "normal range," plaintiff had continued to receive medication and joint injections, and he had been referred to an orthopedic specialist).

Because no Eighth Amendment violation has been asserted, PrimeCare Medical cannot be liable under §1983. Accordingly, this Defendant is entitled to dismissal.

### D. **Defendant Warden Brian Clark**

Plaintiff's Eighth Amendment claim against Warden Clark is predicated on the theory that he was aware of Plaintiff's medical condition but refused to do anything about it.

Again, "non-medical prison officials are generally justified in relying on the expertise and care of prison medical providers." Spruill, 372 F.3d at 236.

Thus, "[i]f a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Id. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id.

Here, Plaintiff's allegations establish that he was under continuous treatment by the prison's health care providers. For the reasons previously discussed, Plaintiff has failed to allege facts that could plausibly establish deliberate indifference on the part of medical staff members to Plaintiff's serious medical needs. It follows that Plaintiff cannot establish liability against these Defendants for failing to intervene in Plaintiff's treatment plan.

In addition, Plaintiff's claims against Clark are also deficient to the extent they are predicated on Clark's denial of Plaintiff's grievance. A prison official's participation in the grievance processes, including appeals, fails to establish the requisite personal involvement." Brooks v. Beard, 167 Fed.Appx. 923, 925 (3d Cir. 2006) ("Although the complaint alleges that [prison officials] responded inappropriately to [the plaintiff's] later-filed grievances about his medical treatment, these allegations do not establish [the prison officials'] involvement in the treatment itself.").

In sum, Plaintiff has failed to plead a plausible constitutional violation for which Clark could be liable. Even if he had, Clark's participation in the grievance process would be insufficient to establish his own personal involvement in the alleged wrongdoing. And, because Clark is a non-medical prison official, he was entitled to rely on the professional judgment of Plaintiff's health care providers. As such, Defendant Clark is entitled to dismissal.

### E. __Defendants Dauphin County Prison and Sheriff's Department__

"On its face, §1983 makes liable 'every person' who deprives another of civil rights under color of state law." Burns v. Reid, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In Monell v. Department of Social Services, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under §1983. Id. at 690. However, as a matter of law, the Dauphin County Prison and the Dauphin County Sheriff's Department are merely subunits of their respective municipalities, and not "persons" subject to suit under §1983. See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); Benard v. Washington County, 465 F. Supp. 2d 461, 470 (W.D. Pa. 2006) (county sheriff's office).

There is also no claim by Plaintiff that his constitutional rights were violated as the result of any policy, custom or practice of the Dauphin County Prison. See Monell, 436 U.S. at 690-91.

### F. **Commonwealth of Pennsylvania**

The United States Supreme Court has ruled that a civil rights action brought against a "State and its Board of Corrections is barred by the Eleventh Amendment unless [the State] has consented to the filing of such a suit." Alabama v. Pugh, 438 U.S. 781, 782 (1978). In Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court established "that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity" are not subject to civil rights liability in federal court. Howlett v. Rose, 496 U.S. 356, 365 (1990). Accordingly, the Commonwealth of Pennsylvania is not a properly named Defendant in this matter.


## V. LEAVE TO AMEND

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Here, it is clear from the facts alleged in the *pro se* complaint that any attempt to amend the plaintiff's §1983 claims against the named Defendants would be futile. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thus, the Court will dismiss the Plaintiff's §1983 claims without leave to amend.

## VI. CONCLUSION

For the reasons set forth above, the Court will grant the motion to dismiss filed on behalf of Defendants PrimeCare Medical Inc., and Dr. William Young, (see Doc. 21), and the motion for summary judgment, filed on behalf of Defendants Warden Brian Clark, Dauphin County Jail and Dauphin County Sheriff's Department. (Doc. 23). A separate Order shall issue.

*s/ Malachy E. Mannion*

**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 30, 2020**
18-1390-01